IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Christopher R. Price (Y41001), | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 19-cv-02560 |
| v. | ) | |
| | ) | Judge John F. Kness |
| McCoy, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

In this *pro se* civil rights lawsuit brought under 42 U.S.C. § 1983, Plaintiff Christopher R. Price, a state prisoner, alleges correctional staff used excessive force against him while Price was detained at Cook County Jail. Before the Court is Defendants' motion for summary judgment, to which Price has responded. For the reasons that follow, Defendants' motion is denied.

**I.      LEGAL STANDARD**

Under Rule 56(a) of the Federal Rules of Civil Procedure, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue of material fact is not demonstrated by the mere existence of "some alleged factual dispute between the parties," *Anderson*, 477 U.S. at 247, or by "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material facts exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017) (quoting *Anderson*, 477 U.S. at 248). A fact is material if it might affect the outcome of the suit. *First Ind. Bank v. Baker*, 957 F.2d 506, 508

(7th Cir. 1992).

The moving party bears the initial burden of demonstrating the lack of any genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the party moving for summary judgment demonstrates the absence of a disputed issue of material fact, the burden "shifts to the non-moving party to provide evidence of specific facts creating a genuine dispute." *Carrol v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012). The nonmovant must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Hannemann v. Southern Door Cty Sch. Dist.*, 673 F.3d 746, 751 (7th Cir. 2012). Summary judgment must therefore be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.' " *Cooper v. Lane*, 969 F.2d 368, 371 (7th Cir. 1992) (quoting *Celotex*, 477 U.S. at 322 (1986)); *Gabb v. Wexford Health Sources, Inc.*, 945 F.3d 1027, 1032 (7th Cir. 2019). Finally, when deciding a motion for summary judgment, the Court must view the facts in the light most favorable to, and draw all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted).

Local Rule 56.1 governs the procedures for filing and responding to motions for summary judgment in this court. The rule is intended "to aid the district court, 'which does not have the advantage of the parties' familiarity with the record and often cannot afford to spend the time combing the record to locate the relevant information,' in determining whether a trial is necessary." *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011) (citation omitted.) Local Rule 56.1(a) requires the moving party to provide a statement of material facts that complies with Local Rule 56.1(d). LR 56.1(a). Local Rule 56.1(d) requires that "[e]ach asserted fact must be supported by citation to the specific evidentiary material, including the specific page number, that supports it.

The court may disregard any asserted fact that is not supported with such a citation." LR 56.1(d)(2).

The opposing party must then respond to the movant's proposed statements of fact. *Schrott v. Bristol-Myers Squibb Co.*, 403 F.3d 940, 944 (7th Cir. 2005); LR 56.1(e). In the case of any disagreement, "a party must cite specific evidentiary material that controverts the fact and must concisely explain how the cited material controverts the asserted fact. Asserted facts may be deemed admitted if not controverted with specific citations to evidentiary material." LR 56.1(e)(3). Mere disagreement with the movant's asserted facts "is inadequate if made without reference to specific supporting material." *Smith v. Lamz,* 321 F.3d 680, 683 (7th Cir. 2003). The party opposing summary judgment may also submit "a statement of additional material facts that complies with LR 56.1(d)." LR 56.1(b)(3). Material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party, *Smith*, 321 F.3d at 683, and a plaintiff's *pro se* status does not excuse him from complying with Local Rule 56.1. *See Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006).

**II.     BACKGROUND**

Defendants filed a Rule 56.1 statement of material facts with their motion for summary judgment. (Dkt. 63.) Consistent with the local rules, Defendants also provided Price with a Local Rule 56.2 Notice, which explains what Local Rule 56.1 requires of a litigant opposing summary judgment. (Dkt. 62.)

In response, Price submitted a motion for summary judgment (Dkt. 81), a "Local Rule 56.1(a) mater[ial] facts and supporting exhibits" (Dkt. 82); and a "declaration" (Dkt. 84). Price's motion for summary judgment merely asks that summary judgment be entered in his favor. Price's statement of material facts is Price's response to Defendants' statements of material fact with supporting exhibits. Price supports his disagreement with some of Defendants' statements of

3

material facts with supporting exhibits, but not all. The Court considers Price's responses that are properly disputed with supporting exhibits. Any additional facts included in Price's response that are not properly supported are not considered. Price's declaration sets forth his version of the facts underlying his lawsuit.

The following facts are taken from Defendants' Local Rule 56.1 statements of material facts, Price's responses to those facts, Price's declaration, and Defendants' objections set forth in their reply brief. The Court accepts as true any undisputed statements of fact from the parties' statements. Where the parties' statements are properly supported by the cited materials and are not otherwise disputed by the evidence raised by the opposing party, the Court considers those statements as undisputed. *See* LR 56.1(e)(3). The Court has carefully examined each response submitted by the parties for relevancy, evidentiary support, and admissibility in construing the facts of this case and gives deference to Price's version of the facts where they are properly presented and supported by admissible evidence. The Court will not consider purely legal arguments, responses lacking evidentiary support, or responses that are inconsistent with deposition testimony.

Price entered Cook County Jail (CCJ) on January 11, 2019. (DSOF, ¶ 5.) Defendants Sergeant McCoy, Correctional Officer Braeseke, and Correctional Officer Mendoza were employed by the Sheriff of Cook County at the Cook County Jail. (*Id.*, at ¶¶ 2-4.)

Upon entering CCJ, Price was referred to and granted protective custody status. (*Id.*, at ¶ 5.) At that time, Price signed a protective custody agreement in which he: 1) agreed to follow the rules of CCJ and follow the direction of staff and 2) acknowledged that he may be removed from protective custody and placed in appropriate housing if he was found guilty of violating any rules or regulations of CCJ, including and not limited to, undermining staff authority. (*Id.*) On March 8,

4

2019, Price's protective custody status was revoked due to him being found guilty of disrespecting staff and disobeying or resisting verbal orders following an unrelated incident in February 2019. (*Id.*, at ¶¶ 6-8.)

On March 17, 2019, Officer Braeseke was the assigned tier officer of Division 6, Tier 1J. (*Id.*, at ¶ 9.) At approximately 4:10 p.m., Officer Braeseke radio called for a sergeant to report in person to Division 6, Tier 1J. (*Id.*) Sergeant McCoy responded and came to Division 6, Tier 1J. (*Id.*) At that time, Price was in the dayroom. (*Id.*)

Officer Braeseke and Sergeant McCoy are both female. (*Id.*, at ¶ 10.) Officer Braeseke is approximately five feet and three inches in height. (*Id.*, at ¶ 11.) Officer Braeseke had only worked as a correctional officer at CCJ for approximately one to two weeks at this time. (*Id.*) Sergeant McCoy was aware that Officer Braeseke was a new correctional officer. (*Id.*)

Upon arriving at the interlock of Tier 1J, Sergeant McCoy and Officer Braeseke had a conversation. (*Id.*, at ¶ 12.) The interlock is a small hall-like area that separates Tier 1J from the rest of Division 6. (*Id.*, at ¶ 13.) There is one door leading from the hallway of Division 6 into the interlock and a second door on the opposite wall leading from the interlock into Tier J1. (*Id.*) The interlock is approximately six feet long and three feet wide. (*Id.*) There is a third door off the side of the interlock that leads into the officer's area. (*Id.*) The officer's area has a desk and a chair where the tier officer sits. (*Id.*) There is also a large window in the officer's area peering out into the dayroom of Tier 1J to allow the tier officer to have direct visual of detainees in the dayroom. (*Id.*) The officer's area is approximately six feet long and three feet wide. (*Id.*)

While Sergeant McCoy and Officer Braeseke were talking, Price approached the door to the interlock which has a metal screen to allow communication between Tier 1J and the interlock. (*Id.*, at ¶ 14.) Once Price appeared at the interlock door, Sergeant McCoy and Officer Braeseke

5

stopped talking. (*Id.*, at ¶ 15.) The parties dispute the content of the conversation between Price and Sergeant McCoy at the interlock door but do not dispute that Price went back to a dayroom table and sat at the table. (*Id.*, Plaintiff's Declaration ¶¶ 22-24.)

Following their conversation, Officer Braeseke stayed inside the interlock while Sergeant McCoy opened up the door leading from the interlock into Tier 1J and motioned for Price to come toward the interlock door. (DSOF, ¶ 16.) As Price approached the interlock door, Sergeant McCoy gave him a verbal command to step back from the doorway to the interlock, including striking her hand out to indicate to Price to step back from the door. (*Id.*, at ¶ 17.) Price complied with Sergeant McCoy's verbal order and took a step backward. (*Id.*, at ¶ 18.) As Price stepped back, he stated "I need to talk to you," while moving his hands as he spoke. (Id.) Sergeant McCoy asked Price what he wanted to talk to he about. (*Id.*, at ¶ 19.) Price responded, "Why do you have an attitude?" (*Id.*) Price was again moving his hands while he spoke. (*Id.*) Sergeant McCoy expressed to Price that she thought he was going to hit her when he approached the interlock door and she expressed concern about the way he was moving his hands when he spoke. (*Id.*, at ¶¶ 20-21.) Concerned about Price's behavior, Sergeant McCoy told him she was ending the conversation and that she would talk with him later. (*Id.*, at ¶ 22.) Price did not report any safety concerns during their conversation. (*Id.*, at ¶ 23.)

As Sergeant McCoy attempted to close the interlock door, Price pushed the door open and entered the interlock. (*Id.*, at ¶ 24.) As Price pushed open the door, the door hit Sergeant McCoy's left arm. (*Id.*, at ¶ 25.) Once inside the interlock, the door closed behind Price, locking him inside the interlock with Sergeant McCoy and Officer Braeseke. (*Id.*, at ¶ 26.)

Feeling physically threatened and concerned about her and Officer Braeseke's immediate safety, Sergeant McCoy deployed a burst of O.C. (oleoresin capsicum, or pepper) spray at Price's

face and gave Price verbal commands to get down on the ground for handcuffing. (*Id.*, at ¶ 27.) The O.C. spray entered at least one of Price's eyes. (*Id.*, at ¶ 28.) Price did not comply with Sergeant McCoy's order to get on the ground, and Sergeant McCoy attempted to physically restrain Price by grabbing one of arms to prepare to handcuff him. (*Id.*, at ¶ 29.) Price flailed his arms while Sergeant McCoy attempted to restrain him. (*Id.*, at ¶ 30.)

During the struggle between Price and Sergeant McCoy, Officer Braeseke stood observing in the corner of the interlock. (*Id.*, at ¶ 31.) Sergeant McCoy instructed Officer Braeseke to call for an "all-available" (a request for all available correctional staff within a division to report in person. (*Id.*, at ¶¶ 31-32.) The parties dispute the actual "struggle" between Sergeant McCoy and Price. Sergeant McCoy alleges that Price was flailing his arms and resisting her efforts to restrain him and that she struck him with closed fist strikes to his face in effort to subdue him. (*Id.*, at ¶¶ 34-35.) Price counters that he was not resisting Sergeant McCoy and that she did not hit him with closed fists at this time. (Plaint's Response ¶¶ 34-35.)

Officer Mendoza was the first additional officer to arrive at the interlock. (*Id.*, at ¶ 36.) Officer Mendoza attempted to restrain Price, and once Officer Mendoza had Price in his grasp, Sergeant McCoy backed away. (*Id.*, at ¶¶ 37-39.) According to Officer Mendoza, Price refused Officer Mendoza's commands to stop resisting, and Officer Mendoza performed a take-down procedure to gain control over Price. (*Id.*, at ¶¶ 40-41.) The parties dispute whether Officer Mendoza slammed Price's body on the ground during this procedure and whether Officer Braeseke assisted with the take down. (*Id.*, at ¶ 41; Plaint.'s Resp. ¶ 41; Plaint. Decl. ¶¶ 36, 39-40.) Price contends that all three Defendants proceeded to punch and or kick him. (Plaint.'s Decl. ¶¶ 41-42.) Officer Mendoza asserts that he took down Price in a manner to prevent his body slamming on the ground and that he only attempted to restrain Price to get him handcuffed. (DSOF, ¶¶ 41-43.)

7

Once Price was handcuffed, Officer Mendoza escorted him to an elevator. (*Id.*, at ¶ 43.) Price alleges that, in the elevator, Defendants punched and kicked him. (Plaint.'s Decl. ¶ 45, Plaint.'s Resp., Pg. 93.) Approximately 15 to 30 seconds elapsed from the time Price pushed his way into the interlock and the time for Officer Mendoza to arrive at the interlock. (DSOF, ¶ 44.) Price was taken to the basement for decontamination following the O.C. spray exposure. (*Id.*, at ¶ 48.)

Following decontamination, Price was escorted to dispensary, and eventually to Cermak Medical. (*Id.*, at ¶ 49.) Price's medical records show that he had a 1 cm size swelling on the left side of his face and a red eye from the O.C. spray exposure. (*Id.*) Cermak also referred Price to Stroger Hospital that same day for medical observation for any possible blunt head trauma. (*Id.*) Stroger Hospital records show Price had a small bump on the left side of his face and a red eye from the O.C. spray. (*Id.*)

On March 17, 2019, CCJ Policy 808 and CCJ Procedure 701 were in effect. (*Id.*, at ¶ 72.) Both documents detail the CCJ grievance procedure. (*Id.*) The procedure requires inmates fill out and submit an Inmate Grievance Form within fifteen days of the alleged offense, and to appeal the grievance response to exhaust administrative remedies within fourteen days from receipt of the grievance response. (*Id.*) Filing an appeal of the grievance response is required to exhaust an inmate's administrative remedies. (*Id.*) Detainees are made aware of the grievance procedures through multiple methods, including information on the grievance form itself, as well as inmate rules and regulations (the inmate handbook). (*Id.* at ¶ 73.) Price acknowledged receipt of the Inmate Handbook upon his entry into CCJ on January 11, 2019. (*Id.* at ¶ 74.) The grievance form requires detainees to identify the specific date, location, and time of the incident; the issue or event they are grieving about; and the names and/or identifier(s) of the accused. (*Id.* at ¶ 75.)

8

On March 25, 2019, Price submitted a four-page grievance, Control No. 1901093, complaining, among other things, about the March 17, 2019 incident. (*Id.*, at ¶ 77.) That same day, Price received a Non-Compliant Grievance Response Form, stating that the grievance did not comply with CCJ policies and procedures because it contained multiple and distinct issues in a single grievance. (*Id.*) The response instructed Price to refile each issue in separate grievances. (*Id.*) On March 29, 2019, Price submitted another, three-page grievance, Control No. 2019x3209, about the March 17, 2019 incident. Price received a response from the Jail and appealed that response to the grievance. (*Id.*)

### III. DISCUSSION

Defendants move for summary judgment on several grounds. More specifically, Defendants argue that Price failed to exhaust administrative remedies as to Defendants Officers Mendoza and Braeseke; that his claims fail on the merits; and that they are entitled to qualified immunity.

#### A. Failure to Exhaust Administrative Remedies

No action shall be brought "with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). To properly exhaust his administrative remedies, an inmate must complete each of the steps prescribed by prison's rules governing prison grievances. *See Chambers v. Sood*, 956 F.3d 979, 983 (7th Cir. 2020) (*citing Lockett v. Bonson*, 937 F.3d 1016, 1025 (7th Cir. 2019)); *see also Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002) ("Unless a prisoner completes the administrative process by following rules the state has established for that process, exhaustion has not occurred."). The primary justification for requiring prisoners to exhaust administrative

remedies "is to give the prison an opportunity to address the problem before burdensome litigation is filed." *Chambers*, 956 F.3d at 983 (*citing Woodford v. Ngo*, 548 U.S. 81, 93–95(2006), and *Schillinger v. Kiley*, 954 F.3d 990, 995–96 (7th Cir. 2020)). Grievances are not, however, intended merely to put an individual defendant on notice of a claim against him. *Jones v. Bock*, 549 U.S. 199, 219 (2007) ("We have identified the benefits of exhaustion to include allowing a prison to address complaints about the program it administers before being subjected to suit. . . . [E]arly notice to those who might later be sued . . . has not been through to be one of the leading purposes of the exhaustion requirement.")

Defendants Mendoza and Braeseke argue that, because Price's second grievance only included allegations against Sergeant McCoy, Price failed to exhaust his administrative remedies as to them. Defendants contend that the second grievance only complained of excessive force by Sergeant McCoy and other unknown officers on March 17, 2019. (DSOF at ¶ 78.) Defendants further contend that Price listed Officer Mendoza and Officer Braeseke only as witnesses on the second grievance but did not make any specific allegations against them. (*Id*.)

The applicable regulation instructs that grievances should include "factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint." ILL. ADMIN. CODE, tit. 20, § 504.810(c). This requires an inmate "articulat[e] what facts the prison could reasonably expect from a prisoner in his position." *Glick v. Walker*, 385 F. App'x 579, 582 (7th Cir. July 13, 2010) (nonprecedential disposition).

The content of Price's second grievance undercuts Defendants' contentions. The grievance clearly identifies all three Defendants as being involved in the incident in the box labeled: "NAME and/or IDENTFIERS OF ACCUSSED". (Dkt. 63-2, pgs. 101-12.) Although the second grievance

10

sets forth specific conduct by Sergeant McCoy, it also includes allegations that "they" punched and kicked Price in the interlock and elevator. (*Id.*, pgs. 11-12.) The Court discerns nothing in the second grievance that identifies Officer Mendoza and Officer Braeseke as merely witnesses to the incident and finds that the second grievance sufficiently identified all three Defendants for purposes of exhausting his administrative remedies. *See Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011) (plaintiff's "grievance served its function by providing prison officials a fair opportunity to address his complaint.").

### B. Excessive Force Claims

Because Price was a pretrial detainee at the time of the incident, his excessive force claim arises under the Fourteenth Amendment's Due Process clause. *See Kingsley v. Hendrickson*, 576 U.S. 389 (2015); *Miranda v. County of Lake*, 900 F.3d 335, 350-51 (7th Cir. 2018). Under the Fourteenth Amendment, an officer's use of force is excessive where it "amounts to punishment," is "not 'rationally related to a legitimate governmental purpose,'" or " 'appear[s] excessive in relation to that purpose' " when viewed objectively. *Id.* (quoting *Bell v. Wolfish,* 441 U.S. 520 (1979)). To prevail on an excessive force claim, "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley*, 576 U.S. at 396–97. Whether the force was objectively unreasonable "turns on the facts and circumstances of each particular case," and depends on factors such as "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; and any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Id.* at 397 (quotation marks and citations omitted). These factors should be considered from the perspective of what a reasonable officer on the scene would have understood, not through

the use of hindsight. *Id.*

Defendants have not established that they are entitled to summary judgment on the merits. Price admits he entered the interlock without permission and that the door closed behind him, locking him in a relatively small room with two correctional officers. Price disputes, however, that he was being aggressive in any manner or that he was resisting Sergeant McCoy such that Sergeant McCoy would have needed to use pepper spray or strike Price. Price further argues that Officer Mendoza unnecessarily slammed Price to the ground, and that once Price was subdued, Officer Mendoza and Officer Braeseke punched and kicked Price for no reason. A jury crediting Price's testimony could conclude that the officers did not attempt to temper or limit the force used and that the force was not proportional to the threat they felt Price posed at that time. As such, the Court cannot conclude, as a matter of law at this stage, that the Defendants' conduct was objectively reasonable under the circumstances.

Defendants argue that their conduct was reasonable because of Price's initial resistance to Sergeant McCoy's orders and the appearance of him being aggressive by waving his arms. But the fact that an initial use of force "may have been justified does not mean that all subsequent uses of that force were similarly justified. Rather, '[f]orce is reasonable only when exercised in proportion to the threat posed, and as the threat changes, so too should the degree of force. . . . It's the totality of the circumstances, not the first forcible act, that determines objective reasonableness." *Abbot v. Sangamon County, Ill.*, 705 F.3d 706, 729 (7th Cir. 2013). Given the contradictory versions of events, a jury could find the officers' use of force unreasonable.

Sergeant McCoy argues that the use of pepper spray was reasonable because she felt threatened by Price after he rushed into the interlock, as shown by the video she produced, and by Price's "threatening demeanor" while at the door of the interlock. Price disputes Sergeant McCoy's

12

description of his demeanor and maintains that he was not threatening and only moved his hands while speaking—as, Price says, he always does. In addition, although a review of the video footage shows Price speaking with someone at the door of the interlock and then swiftly entering through the open doorway, the Court cannot conclude that the video blatantly contradicts Price's version of events such that no reasonable jury would believe his account that he was not behaving in an aggressive manner and did not pose a threat to justify the use of pepper spray. *See Brooks v. City of Aurora, Ill.*, 653 F.3d 478, 486 (7th Cir. 2011) (use of pepper spray could be deemed to be excessive force when it was "gratuitous or unprovoked.").

Officer Braeseke also argues that the excessive force claim against her should be dismissed because she was not actually involved with any force in the interlock, but instead stood by and called for assistance. Officer Braeseke argues that Price cannot dispute that claim because he testified in his deposition that his eyes were closed during the incident due to the pepper spray in his eyes. Price also testified at his deposition, however, that he was able to peek out at times and that he knew Officers Braeseke and Mendoza were involved in subduing him because they were speaking to him during that part of the incident (Plaint.'s Dep., pg. 82, lines 18-21). Officer Braeseke further argues that all of the incident reports support her contention that she merely stayed in the corner of the interlock and called for back-up. Although these reports may support Officer Braeseke's contention, the Court cannot dismiss Price's version of the events as mere conjecture given that he was clearly present and testified that she was involved in subduing him. A jury could, therefore, find that Officer Braeseke was involved in the actual physical take down of Price.

Given Price's version of the relevant events, the "takedown" and the alleged subsequent punching and kicking by Officers Braeseke and Mendoza also raise a genuine issue of material

13

fact as to whether those actions were necessary. At this stage, the Court cannot hold that no reasonable jury would believe Price's account that he was not behaving in an aggressive manner and did not pose a threat such that the take-down and subsequent punching and kicking constituted excessive force. *See Allen v. Richardson*, No. 16-CV-410-WMC, 2019 WL 135683, at *4 (W.D. Wis. Jan. 8, 2019) (jury could find that gratuitous punches were intended to inflict pain, rather than to restore order); *McGregory v. Ozelie*, No. 18-CV-25, 2019 WL 2422884, at *3 (E.D. Wis. June 10, 2019) (denying summary judgment because a jury could find that plaintiff was not resisting and that the officers used gratuitous kicks and punches).

Defendants do not address Price's claim that they also assaulted him in the elevator after being removed from the interlock. In their reply, Defendants argue that Price's allegations related to being taken to the elevator were dismissed by the court in its initial review order. That order, however, dismissed only the Defendant identified as "Unknown officer first shift." (Dkt. 5, pg. 3.) Price's claim that he was further assaulted by Defendants in the elevator, therefore, remains.

In short, the Court cannot discount Price's version of events as a matter of law. Put differently, genuine issues of material fact exist as to whether the Defendants used force against Price and, if so, whether that force was proportional and appropriate to the threat Price posed both in the interlock and elevator. As a result, the Court denies Defendants' summary judgment motion on the merits of Price's excessive force claims.

### C. Qualified Immunity

Defendants finally argue that qualified immunity protects them from liability. Defendants' qualified immunity argument focuses solely on Price's claims regarding the alleged excessive use of force in the interlock, not in the elevator. Accordingly, the Court will not address whether Defendants are entitled to qualified immunity as to that claim.

Qualified immunity "shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Taylor v. Barkes*, 575 U.S. 822, 825 (2015) (internal quotation marks omitted). When evaluating whether qualified immunity applies, the court must ask "two questions: (1) whether the facts, taken in the light most favorable to the plaintiff, make out a violation of a constitutional right, and (2) whether that constitutional right was clearly established at the time of the alleged violation." *Alvarado v. Litscher*, 267 F.3d 648, 652 (7th Cir. 2001); *see also Lane v. Franks*, 573 U.S. 228, 243 (2014). For the law to be clearly established, the "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

As explained above, the facts as Price describes them plausibly make out a violation of his constitutional rights. In addition, it is well established that it is objectively unreasonable for an officer to use significant force on an unresisting or passively resisting subject. *See Abbott v. Sangamon Cty.*, 705 F.3d 706, 732 (7th Cir. 2015) ("it was well-established in this circuit that police officers could not use significant force on nonresisting or passively resisting suspects"); *Clash v. Beatty*, 77 F.3d 1045, 1048 (7th Cir.1996) (dismissing appeal of denial of qualified immunity in excessive force case; issue of fact existed as to whether officers applied "wholly gratuitous" force against subdued suspect not resisting arrest). This prohibition applies even though the detainee may previously have refused to comply with officers' orders or even posed a threat to officer safety. *Miller v. Gonzalez*, 761 F.3d 822, 829 (7th Cir. 2014). Given Price's version of the events, including that it would be unreasonable for Defendants to believe he was being noncompliant and posed a threat at the times of the alleged excessive force, the officers are not entitled to summary judgment.

15

## IV. CONCLUSION

For the reasons stated above, the Court denies Defendants' and Price's cross-motions for summary judgment (Dkt. 64, 81).

SO ORDERED in No. 19-cv-02560.

Date: November 8, 2021

_____
JOHN F. KNESS
United States District Judge